496 F.2d 800
 SILVER CHRYSLER PLYMOUTH, INC., Plaintiff-Appellee,
v.
CHRYSLER MOTORS CORPORATION and Chrysler Realty Corporation,
Defendants-Appellants.
CHRYSLER MOTORS CORPORATION and Chrysler Realty Corporation,
Petitioners,
v.
Honorable Jack B. WEINSTEIN, Judge of the United States
District Court for the Eastern District of New
York, Respondent.
 Motion Nos. 4, 10, Dockets 74-1104, 74-1095.
 United States Court of Appeals, Second Circuit.
 Argued Jan. 15, 1974, Submitted to the Court En Banc April 16, 1974.
Decided April 25, 1974.
 
 Kelley, Drye, Warren, Clark, Carr & Ellis, New York City, in opposition to the motion to dismiss the appeal and in support of the petition for a writ.
 Hammond & Schreiber, New York City, for the motion to dismiss the appeal and in opposition to the petition for a writ.
 Before KAUFMAN, Chief Judge, and MOORE, FRIENDLY, HAYS, ANDERSON, FEINBERG, MANSFIELD, MULLIGAN, OAKES and TIMBERS, Circuit Judges.
 MOORE, Circuit Judge:
 
 
 1
 This is a motion to dismiss an appeal from an order denying a motion to disqualify counsel. It originally came on to be heard before a panel consisting of the writer and Judges Friendly and Anderson. A member of the court then in regular active service having requested that the motion be considered en banc and all of the judges having voted in favor of such hearing, it has been so considered by all active judges and the members of the panel on the original briefs and record, without further oral argument.
 
 
 2
 The merits of the present controversy which relate solely to the appealability of Judge Weinstein's order denying Chrysler's motion to disqualify plaintiff's counsel in an action entitled Silver Chrysler Plymouth, Inc. against Chrysler Motors Corporation and Chrysler Realty Corporation, 73 Civ. 853, are not before us (D.C., 370 F.Supp. 581).
 
 
 3
 A young law clerk, Dale A. Schreiber, employed after graduation from law school by Kelley Drye Warren Clark Carr & Ellis (Kelley Drye) apparently worked for almost three years in the litigation department of that firm. One of the principal clients of the firm is the Chrysler Corporation. Schreiber was engaged in certain litigation matters for Chrysler, petitioner-appellant in this case. Schreiber left Kelley Drye to join Alexander Hammond and together they formed the firm of Hammond & Schreiber. Hammond (and the firm of Hammond & Schreiber) is alleged to specialize in prosecuting automobile dealers' claims against manufacturers, including Chrysler. The suit creating this controversy is a dealer suit against Chrysler in which Schreiber is representing the dealer. Chrysler's attorneys seek to disqualify Schreiber from acting as the attorney and to dismiss the complaint because of such representation. Judge Weinstein denied Chrysler's motion to disqualify.
 
 
 4
 The problem facing Chrysler's attorneys is: how can an appeal, if there be one, be taken at this stage of the litigation?
 
 
 5
 For years this appealability problem has plagued both counsel and the courts. The procedures followed by Chrysler, as petitioner-appellant, on this phase of the case, exemplify the current situation and uncertainty.
 
 
 6
 On August 27, 1973, Chrysler moved to disqualify and to enjoin plaintiff-dealer's attorneys, Hammond & Schreiber, from further participation in the case. By order, November 26, 1973, Judge Weinstein denied the motion.
 
 
 7
 On December 11, 1973, Chrysler sought to have Judge Weinstein amend his order to include a Section 1292(b) statement that an immediate appeal might materially advance the termination of the litigation.[1] This, by order of December 17, 1973, the Judge refused to do. Chrysler then filed its notice of direct appeal dated December 21, 1973.
 
 
 8
 Chrysler then turned to this Court for permission to appeal pursuant to 28 U.S.C. 1292(b) and Rule 5, Fed.,R.A.P. This motion was denied on January 10, 1974. Chrysler previously (January 3, 1974) had sought to stay District Court proceedings until the appeal should be determined. On January 15, 1974, the motion was granted.
 
 
 9
 On January 9, 1974, plaintiff-respondent-appellee moved to dismiss Chrysler's appeal and challenged the power of this Court to grant relief by way of mandamus. Apparently still uncertain as to how to reach this Court, Chrysler on January 23, 1974, filed its petition for an Extraordinary Writ pursuant to 28 U.S.C. 1651 and Rule 21, Fed.R.A.P., directing Judge Weinstein to vacate his original order, to disqualify the law firm of Hammond & Schreiber, and to dismiss the complaint.
 
 
 10
 Thus, procedural uncertainties subsequent to denial of the motion have produced (1) a notice of appeal; (2) a motion in the District Court to amend the order to include a 1292(b) statement; (3) a motion to this Court for permission to appeal; and (4) a petition for an Extraordinary Writ-- each except for the notice of appeal included the same repetitious statements of fact and law and each required time-consuming consideration by the courts.
 
 
 11
 By order of January 29, 1974, this Court joined the petition for a Writ and the motion to dismiss the appeal. The upshot of all these maneuverings is to bring before us the simple question and the necessity of resolving the difficult answer: is the order denying disqualification appelable?
 
 
 12
 Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), may be taken as the cornerstone. There in a case involving the appealability of the denial of a motion in a stockholders' derivative action to require security for expenses, Mr. Justice Jackson with his background of long trial experience wrote:
 
 
 13
 (After final judgment) it will be too late effectively to review the present order and the right conferred by the statute, if it is applicable, will have been lost, probably irreparably . . .. This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. The Court has long given this provision of the statute this practical rather than a technical construction . . ..
 
 
 14
 337 U.S. at 546-547.
 
 
 15
 Appeal from less than a final judgment was permitted.
 
 
 16
 Resolution of the problems attendant to any litigation usually calls for a 'practical' rather than a 'technical' approach if the desideratum of an equitable result is to be attained. However, we are not here writing on a clean slate.
 
 
 17
 This Circuit in 1956 in Harmar Drive-In Theatre v. Warner Bros. Pictures, 239 F.2d 555 (2d Cir. 1956), squarely faced the appealability question saying: 'Before reaching the merits it is necessary to consider whether the order is appealabel.' There, as here, supplemental briefs addressed to this question had been requested by the court and submitted. The court referred to four earlier (1954, 1955, 1956) cases in this Circuit involving motions to disqualify counsel. In Consolidated Theatres v. Warner Bros. Circuit Management Corp., 216 F.2d 920 (2d Cir. 1954), Judges Chase, Frank and Hincks affirmed on the merits an order granting disqualification. Appealability was not discussed. A year later Laskey Bros. of W. Va., Inc. v. Warner Bros. Pictures and Austin Theatre, Inc. v. Warner Bros. Pictures, 224 F.2d 824, cert. denied, 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed. 814 were decided. (Then Chief) Judge Clark wrote the opinion affirming disqualification in Laskey Bros. as well as the denial of disqualification in Austin. Judge Chase concurred; Judge Ryan of the District Court dissented. Reference was made to the Fisher Studio case, argued but then undecided. Fisher Studio came before this Court in early 1956.[2] (Then Chief) Judge Clark wrote the opinion affirming with minor modifications an order of disqualification, noting as to jurisdiction that 'since these orders of disqualification are collateral to the main case * * * (the final order of disqualification is) also appropriately treated as a separate and collateral proceeding.' (p. 204). Late in 1956 Harmar was decided with the benefit of Cohen and the cases above mentioned. After considering the question Judge Swan wrote: 'A majority of the court are of opinion that with respect to appealability no distinction exists between orders granting disqualification and those refusing to do so.' (p. 556). Thus, from Cohen in 1949 and until 1959, the law in this Circuit in favor of appealability of disqualification orders, granted or denied, rested on the solid foundation of Cohen, and appeared to have been definitely established.
 
 
 18
 However, in February 1959 an order denying disqualification came before a panel of (then Chief) Judge Clark, Circuit Judge Moore and District Court Judge Gibson (D.C.Vt.) in the case of Fleischer v. Phillips, 264 F.2d 515. (Then Chief) Judge Clark chose not to follow Cohen or his colleagues in Harmar or his own opinion in Laskey Bros. and rejected appealability. District Judge Gibson joined him. Judge Moore in his dissent after referring to Cohen and Harmar pointed out that 'The disqualification of the attorneys selected by the defendants is wholly collateral to the issues in that case' and that 'consideration should also be given to the practical situation with which some future trial judge will be confronted in ruling on questions of admissible evidence.' (p. 519).
 
 
 19
 Four months later (June 1959) another order denying disqualification was appealed. Marco v. Dulles, 268 F.2d 192 (2d Cir. 1959). The appellant here relied on Judge Swan's opinion in Harmar. Judge Swan apparently felt that Fleischer superseded his Harmar opinion and that the majority (Judge Hincks concurring) were 'constrained to dismiss the appeal.' Judge Moore, still preserving the stare decisis approach, dissented, again referring to the law as expounded in Cohen and Harmar and issued a Cassandra-type warning that 'the dismissal of this appeal will only accomplish all that both the Supreme Court and the recent legislation (28 U.S.C. 1292(b), Sept. 1958) hoped to avoid, namely, repetition, duplication, delay and expense.' (p. 194).
 
 
 20
 Over the years the composition of the Court has changed-- and so have structures of large metropolitan law firms. Charges of conflict of interest and motions to disqualify will probably increase rather than abate. But equally the importance of resolving this issue at the outset also increases in greater ratio lest a costly and protracted trial be tainted on the merits by an issue collateral thereto.
 
 
 21
 Thus we find in 1973 an appeal from an order granting motions to disqualify an attorney, Emle Industries, Inc. v. Patentex, Inc., 478 F.2d 562, Judge (now Chief Judge) Kaufman, writing for the panel which included Judges Anderson and Oakes, accepted the appeal and affirmed the District Court's order, saying as to jurisdiction 'We have jurisdiction to review an order disqualifying an attorney under the doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).' (p. 570, fn. 5). In the same footnote he showed his awareness of both Fleischer and Marco, supra.
 
 
 22
 Other circuits have approached the disqualification problem in various ways. In the Ninth Circuit after referring to Fleischer (as not following Harmar), Marco and Wilhelm, 312 F.2d 399 (1963) in this Circuit, the Court in Cord v. Smith, 338 F.2d 516 (1964), although holding the order not appealable, reached the same result by writ approach (28 U.S.C. 1651)-- even as Chrysler alternatively seeks to do here-- and directed the lower court to set aside the order denying disqualification and directed disqualification, saying:
 
 
 23
 We think that we should exercise our discretion to so treat (as a petition for a writ) the matter in this case. Continued participation as an attorney, by one who is disqualified by conflict of interest from so doing, will bring about the very evil which the rule against his participation is designed to prevent, and a subsequent reversal based upon such participation cannot undo the damage that will have been done as a result of such participation. We therefore proceed to the merits.
 
 
 24
 338 F.2d at 521-522.
 
 
 25
 The court followed Cord in Chugach Elec. Ass'n v. United States, 370 F.2d 441 (9 Cir. 1966), employing the writ method to effect disqualification after denial thereof by the District Court.
 
 
 26
 In 1972 the Fourth Circuit in United States v. Hankish, 462 F.2d 316, declined to take jurisdiction via the writ procedure (the petition would have had to have been construed as an application for a writ) because it indicated that the order of disqualification might be held to be appealable under Cohen and our own decision in Harmar (reference is also made to Fleischer), saying: 'If we should follow the decision in Harmar, the order in the instant case would be appealable under the rule in Cohen.' Unlike the present case, however, an appeal under 28 U.S.C. 1291 had not been sought by the filing of a notice of appeal.
 
 
 27
 In Yablonski v. United Mine Workers of America, 142 U.S.App.D.C. 193, 454 F.2d 1036 (1971), the D.C. Circuit, dealing with the denial of a motion to disqualify counsel, said: 'We think the order now challenged was appealable, * * *.' (p. 1038). As to mandamus, the Court said: 'It is clear that the case may be sufficiently extraordinary for mandamus 'where it (is) necessary to confine a lower court to the terms of an appellate tribunal's mandate." The Court adopted the reasoning of Cord, which is equally true here, namely, 'Continued participation as an attorney, by one who is disqualified by conflict of interest from so doing, will bring about the very evil which the rule against his participation is designed to prevent, and a subsequent reversal based upon such participation cannot undo the damage that will have been done as a result of such participation.' Cord, supra, at 521-522.
 
 
 28
 In the Fifth Circuit, Judge Tuttle, writing for the Court in Uniweld Products, Inc. v. Union Carbide Corporation, 385 F.2d 992 (1967), held that an order denying disqualification was appealable, saying: 'First, we conclude that this is an appealable order, in the light of the decision of this court in Tomlinson v. Florida Iron & Metal, Inc., 5th Cir. (1961), 291 F.2d 333.' (p. 994). Tomlinson had held that an order denying a disqualification motion was appealable under the Cohen principle.
 
 
 29
 In Greene v. The Singer Company (November 2, 1971, unreported, No. 71-1835), the Third Circuit held that an order denying a petition to disqualify one of the appellee's lawyers was appealable under the Cohen rule. The court, believing that 'The Second and Ninth Circuits have held the Cohen rule inapplicable.' (citing Fleischer, Marco and Wilhelm in the Second Circuit and Cord in the Ninth Circuit) chose to follow the Fifth Circuit's Tomlinson approach authorizing an appeal, and said: 'To require appellant to await a final judgment on the merits before testing the legality of the order denying the disqualification may, for practical purposes, deny it the reality of appellate processes. * * * Conversely, if the appeal goes forward now, prior to trial, the possibility of irreparable injury would be substantially lessened.'
 
 
 30
 Attempted appeals either by notice of appeal or by the writ approach in proceedings other than counsel disqualification are neither dispositive nor authoritative.
 
 
 31
 In American Express Warehousing, Ltd. v. Transamerica Ins. Co., 380 F.2d 277 (1967), the appeal was from a discovery order in a so-called 'big case.' The order, unlike the order here, was within the mainstream of the litigation and not collateral thereto. (Then Chief) Judge Lumbard dissented and would have granted mandamus.
 
 
 32
 In Weight Watchers of Phila. v. Weight Watchers Int., 455 F.2d 770 (1972), an order permitting the defendant to communicate with potential members of a class on whose behalf the plaintiff sought to maintain a class action, was held non-appealable by this Court, (then Chief) Judge Friendly writing the opinion, concurred in by Judges Moore and Oakes. As Judge Friendly pointed out (p. 773), 'When we compare the order here sought to be appealed with others implicating Cohen, the inapplicability of that decision becomes clear.'
 
 
 33
 In International Business Machines Corp. v. United States, 480 F.2d 293 (1973) (en banc), this Court dismissed both appeal and the petition for mandamus. Judges Moore and Timbers dissented. The majority opinion held that the Expediting Act (15 U.S.C. 29) deprived this Court of jurisdiction to hear the appeal and that 1292(b) was of no avail since the District Court had not certified that a controlling question of law was involved. Moreover, IBM involved the production of documents in the case being prepared for trial. Production was not a separate or collateral issue as is disqualification here.
 
 
 34
 Thus, none of these three cases bears upon the issue now before us.[3]
 
 
 35
 By way of summary, in this Circuit, subsequent to Cohen, in Consolidated Theatres, Laskey Bos. of W. Va., and Fisher Studio, supra, the respective panels all accepted the appeals. Harmar definitely held an order denying disqualification to be appealable. In 1959 (then Chief) Judge Clark and a District Court Judge, without referring the case to an en banc court, in effect, overruled Harmar.
 
 
 36
 This review would indicate that (then Chief) Judge Clark accepted a disqualification order appeal in Laskey Bros. but rejected an appeal from an order denying disqualification in Fleischer. Judge Swan in Harmar sustained the appealability of an order denying disqualification but felt 'constrained' to decide otherwise in Marco. Judge Moore was consistent in sustaining the appealability of orders granting or denying disqualification. Now in 1974 we believe that Cohen requires a return to the wisdom of Harmar and so we uphold the appealability of an order denying disqualification, just as we have long upheld the appealability of an order granting this. There is no sufficient basis for distinguishing between the two. In both situations the order is collateral to the main proceeding yet has grave consequences to the losing party, and it is fatuous to suppose that review of the final judgment will provide adequate relief.
 
 
 37
 It would seem to be appropriate at this time to dispel the needless uncertainty as to the law and procedure relating to the appealability of disqualification orders. All three prerequisites of Cohen are met. Since this is so, there is no reason not to follow the mandate of the Supreme Court and adopt their decision, namely:
 
 
 38
 We hold this order appealable because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it.
 
 
 39
 337 U.S. at 547.
 
 
 40
 By holding such an order directly appealable, we eliminate the uncertainties (and the paperwork) attendant to resorting to 1292(b) and/or 1651. Since the ultimate objective is to bring before an appellate court an important question which, if unresolved, might well taint a trial, why should not this question be presented before judicial and attorney time may have been needlessly expended?
 
 
 41
 Fleischer and Marco, holding to the contrary, are overruled.
 
 
 42
 Motion to dismiss appeal denied.
 
 
 43
 In view of our decision denying the motion to dismiss the appeal, the petition for a writ becomes moot and is therefore dismissed.
 
 
 
 [1]
 Interlocutory Appeals Act, 28 U.S.C. 1292, September 2, 1958, 72 Stat. 1770
 
 
 [2]
 Fisher Studio v. Loew's Inc., 232 F.2d 199
 
 
 [3]
 In the same general category is Baker et al. v. United States Steel Corporation et al., 2 Cir., 492 F.2d 1074, decided February 25, 1974